1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NSAHLAI LAW FIRM
EMMANUEL NSAHLAI, SBN (207588)
Email: nsahlai.e@nsahlailawfirm.com
3250 WILSHIRE BLVD, STE 1500
LOS ANGELES, CA 90010
Tel    :  (213) 797-0369
Fax    :  (213) 973-4617

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jane Doe, individually, and on behalf of all others similarly situated; DOES plaintiffs 1 through 1000, §§§§ | **Case No.:** |
| Plaintiffs, §§§ | **COMPLAINT FOR DAMAGES, INJUNCTION AND DECLARATORY RELIEF** |
| vs. § | |
| CHRISTOPHER ANU FOBENEH a.k.a CHRIS ANU, an individual; and DOES 1 through 5000. §§§ Defendants. | 1. FOR PERSONAL INJURY DAMAGES PURSUANT TO THE ANTI-TERRORISM ACT;<br>2. FOR PERSONAL INJURY DAMAGES PURSUANT TO THE ALIEN TORT CLAIMS ACT;<br>3. FOR RICO (18 U.S.C. § 1962(C))<br>4. FOR RICO CONSPIRACY (18 U.S.C. § 1962(D))<br>5. LIABILITY FOR AIDING AND ABETTING ACTS OF INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333(a)<br>6. LIABILITY FOR CONSPIRING IN FURTHERANCE OF ACTS OF INTERNATIONAL |

-1-

*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

TERRORISM PURSUANT TO
18 U.S.C. § 2333(a)
7. PROVISION OF MATERIAL
SUPPORT TO TERRORISTS IN
VIOLATION OF 18 U.S.C.
§2339a
8. NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS

**DEMAND FOR JURY TRIAL**

_____

*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

1

## I.    INTRODUCTION

2    Plaintiffs, on behalf of themselves and all others similarly situated, who have

3    suffered the loss of family friends, relatives, employees, agents, co-workers, laborers,

4    and resulting from that, suffered  severe emotional distress, harassment, anxiety,

5    suffering, sleepless nights and other assorted grief and anguish due to the conduct,

6    actions, participation, and material support of defendant CHRISTOPHER ANU

7    FOBENEH ("FOBENEH") to his agents, joint venture partners, forces, organizations

8    who are armed separatist groups,  culminating in the death of several employees,

9    laborers, and agents of plaintiff, and total loss of economic interests of plaintiff Jane

10   Doe.

11   Defendant FOBENEH, a terrorist, scammer, and opportunist, sensed in late

12   2016 a way of scamming millions of Cameroonians from their hard earned money by

13   taking advantage of a lawyers civil protest in Cameroon, to declare a secessionist

14   "government" he leads. He has, on information and belief, already raised several

15   million dollars through his website www.mytriptobuea.com, and used the funds, not

16   only to fund his lavish lifestyle for him and his accomplices, and payment of tuition

17   for their kids and related family members, but **critically for this complaint** – and in

18   a bid to seek legitimacy among secessionist Cameroonians – **<u>materially supported</u>**

19   violent crimes of killings, kidnappings, murder, violation of students education rights,

20   terrorism, destruction of property and infrastructure, money laundering, to justify his

21   status as a Cabinet member of the State he formed with his accomplices called

22   "Ambazonia". Accordingly to United Nations Estimates as of December 2018, the

23   conflict in Cameroon has led to the loss of about 600 civilians, and created 30,000

24   refugees living in Nigeria, and over 437,000 internally displaced Cameroonians

25   suffering immeasurably. Defendant Fobeneh, along with his co-conspirators, are

26   directly responsible for the sufferings of each and everyone noted above. For the

27   purposes of this complaint, they are similarly responsible for the loss of lives of

28

-1-

plaintiffs employees, laborers, agents, and co-workers, and complete annihilation of all economic interests of plaintiffs.

Further, defendant FOBENEH has violated all gun controls, firearms, and explosives Federal and State laws. He has engaged in firearms, ammunition, and explosives dealings in violation of all gun control and firearms licensing, exportation, purchases and business laws. He has been reported to the ATF and other agencies for these violations of gun control and licenses and exportation laws.

Mr. Fobeneh and his accomplice further created a non-profit association called "Ambazonia Foundation Inc.", obtained by making false representations to the Internal Revenue Service ( "IRS") about the objectives of the non-profit. He has used this non-profit to engage and finance his criminal and terrorist actions of material support of terrorism and violent crimes, from his residence in the USA, directing killings, and murders, and destruction of goods and property in Cameroon.

Terrorism is broadly defined as "the unlawful use of violence and intimidation, especially against civilians, in the pursuit of political aims as," and "international terrorism," according to 18 U.S.C. § 2331 as "activities that involve acts or acts dangerous to human life that are in violation of the criminal laws of the United States or of any State, that would be a criminal violation if committed within the jurisdiction of the United States or of any State." The conduct, actions, participation, and material support of

This complaint does not seek to abrogate Mr. FOBENEH's constitutional First Amendment Rights to free speech. This case is not about inhibiting his rights to free speech, or to engage in political advocacy, or as a rights group, and it expressly disavows any such intentions, but it is about their conduct, actions, material support, and participation in terrorism, which lead to plaintiffs irreparable injuries. FOBENEH has engaged in conduct and actions equating to "training", "expert advice or assistance," "service", and providing "personnel" to the armed rebel fighters, which

1  he has brought all under his control, leading to deaths of innocent civilians, including
2  the parents and family members of plaintiffs.

3  The loss of one's life is never adequately compensated by monetary
4  compensation, nor is the permanent loss of all economic interests of plaintiff.
5  Accordingly, this complaint will also seek a Temporary Restraining Order,
6  preliminary and permanent injunction, as well as declaratory relief, against any and
7  all conduct, actions, participation, and material support of terrorism against
8  FOBENEH, his organizations, supporters, accomplices, and DOES defendants, who
9  will be named once discovery gets going and they are identified.

10  Fobeneh, an erstwhile "pastor" who supports a genocide in Cameroon if it
11  would enrich him and his Ambazonia Interim Government ("AIG"), has brainwashed
12  youths of Cameroon, giving them firearms illegally procured from his residence in the
13  USA, and telling them that he has provided them with "Odeshi" which is a voodoo
14  bullet-proof vest, which will prevent a bullet from striking them, and hence they can
15  go and commit his killings spree on his behalf without fear. Sadly, some of the young
16  gullible youths and child soldiers have been brainwashed by his preaching, and they
17  have killed, maimed and tortured employees and laborers of plaintiff who violated his
18  edict, so much so that plaintiff's entire work force is totally scared of going to work,
19  for fear of life, limb, or burning of their homes.

20  To entice further followers, Mr. Fobeneh and his supporters have claimed their
21  actions are "ordained by God", thus seeking a Sovereign or Godly Papal-like authority
22  to recruit their fighters and followers, and commit their terrorism and violence.

23  Plaintiffs will file, as appropriate, criminal complaints with the FBI offices with
24  jurisdiction over FOBENEH's residence, police reports with local police terrorism
25  units, as well as complaints with the immigration authorities for his immigration law
26  violations. Plaintiffs will also file complaints with the ATF for his illegal firearms,

-3-
*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

ammunition, and explosives purchases. Plaintiffs seek, and will get, God willing, justice for themselves and all others similarly situated.

## NATURE OF ACTION

1.      This is an action for Temporary Restraining Order, Preliminary and Permanent Injunction, as well as damages against CHRISTOPHER ANU FOBENEH and DOES 1-5000, pursuant to the Antiterrorism Act, 18 U.S.C. § 2333 ("ATA") for aiding, abetting, accessories to crime before and after the fact, and knowingly providing material support and resources to armed militia groups that carried out Attack that killed plaintiff's father that killed plaintiff Jane Doe's father and brother, plaintiff John Doe's father, as wells attacks throughout circa October 2016 to present that has killed hundreds of innocent civilians, who are the parents, children, and spouses, of US citizens and residents natives of Cameroon.

2.      The ATA's civil remedies have served as an important means for enforcing the federal criminal anti-terrorism provisions since the early 1990s.

3.      Congress enacted the ATA in October 1992 as a legal complement to criminal penalties against terrorists that kill or injure Americans abroad, specifically intending that the civil provisions would not only provide a mechanism for compensating victims of terror but also serve as an important means of depriving terrorists of financial resources to carry out attacks.

4.      Following the bombing of the World Trade Center in New York by al-Qaeda in1993, Congress targeted terrorist resources again by enacting 18 U.S.C. § 2339A in September 1994, making it a crime to provide material support or resources knowing or intending that they will be used in preparing or carrying out terrorist acts.

5.      In April 1996, Congress further expanded the effort to cut off resources to terrorists by enacting 18 U.S.C. § 2339B, making it a crime to knowingly provide material support or resources to a designated foreign terrorist organization.

-4-

6.     In the wake of the terror attacks on the United States by al-Qaeda on September 11, 2001 killing nearly 3,000 Americans, Congress amended the "material support" statutes, 18 U.S.C. §§ 2339A-B, via the PATRIOT Act in October 2001 and the Intelligence Reform and Terrorism Prevention Act of 2004, to impose greater criminal penalties for violating these statutes and to expand the definition of "material support or resources" prohibited thereby.

7.     The Ambazonia Interim Government ("AIG"), of which FOBENEH is the spokesperson, cabinet member, Secretary of Communications and IT, as well as one of the founding fathers and **de facto leader**, is the self-annointed "government" of a most violent and repressive Ambazonian separatist movement, and, upon the coordination and planning and support of Fobeneh, it has pooled together all armed fighters in their "Ambazonia" region under its Umbrella.

8.     In reality, the AIG is a RICO criminal enterprise, a scam, formed under the umbrella of a newly approved 501 c IRS non-profit organization called Ambazonia Foundation Inc., with a determination letter of Approval from the Internal Revenue Service ( "IRS") dated in September of 2018, and no doubt the IRS has no clue as to the true objectives of this non profit organization, which has an aim of siphoning money off innocent and ignorant Cameroonians, under the guise of "fighting" for secession.

9.     Through their illegally obtained non-profit organization as a 501c which he and his accomplices tricked the IRS to approval  – and as a 501c non-profit, they are not supposed to engage in political and legislative lobbying which they consistently do, nor the purchase of firearms, or material support of crimes and violence – they have raised funds, and financed fighters in Cameroon which have killed plaintiffs laborers, cut their fingers, burnt their houses, if they disobeyed their edicts, such as, "ghost town," which prevents any civilian from stepping out of their home or going to work.

10.     Officially, AIG aims to raise the cost of Cameroon's government in the North West and South West regions of Cameroon to be higher than the profits the country gets from there; their aim is to make North-West and South-West regions of Cameroon "ungovernable", and to coerce, intimidate, kill, kidnap, harm any innocent civilians who do not obey or agree or subscribe to their political goals.

11.     At several points in 2018, Amnesty International and Human Rights Watch have accused the AIG separatists, materially supported by defendant FOBENEH and DOES defendants, of violently enforcing the boycott of government schools by destroying over 40 schools and assaulting teachers who refused to comply. They've also been accused of kidnapping civilians suspected of working with the government.

12.     FOBENEH, and the AIG, have repeatedly threatened to kill or harm civilians, and do kill and harm civilians, who engage in any civic duty such as going to school, voting, or not adhere strictly to their revolutionary edicts.

13.     FOBENEH and DOES Defendants knowing provide material support to the AIG, its fighters, agents, and related organizations, with the knowledge and intent, that they execute violent acts and crimes, in violation of USA laws, and such violent acts and crimes, not only harm Cameroonians living within Cameroon, but also a substantial portion of USA citizens of Cameroonian origin, whose parents, siblings, children, extended family are killed, businesses ruined, property stolen, and thus they suffer intolerable pain and anguish; or kidnappings, and the US based Cameroonians are contacted to pay ransom, as happens hundreds of times.

14.     By providing material support and platform, including Does defendants holding fund raising activities for FOBENEH and the AIG, FOBENEH violated the federal prohibitions on providing material support or resources for acts of international terrorism (18 U.S.C. § 2339A), and committed acts of international terrorism as defined by 18 U.S.C. § 2331, as well as violated numerous other Federal and State

-6-

criminal laws, as described further below. Accordingly, FOBENEH and Doe defendants are liable pursuant to 18 U.S.C. § 2333 to the plaintiffs, who were injured by reason of acts of international terrorism.

15.    Plaintiffs' claims are based not upon the speech communications of FOBENEH and Does defendants on social media postings, but upon Defendants provision of the infrastructure, platform, which provides material support to AIG and related armed militia in Cameroon.

## THE PARTIES

16.    Jane Doe, a resident of this County, has had her employees killed, fingers cut, feet sliced, houses burnt, when ever Fobeneh's agents realize that they have gone to work to her place of business.

17.    The nondisclosure of Jane Doe's identity is necessary for Jane Doe and her family's life, as FOBENEH and his AIG are currently operational and engaging in consistent acts of terrorism. As the 9th Circuit has held, pseudonyms may be used to protect a party from "injury", and "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII* v. *Advanced Textile Corp., 214 F.3d 1058, 1067-68 (9th Cir. 2000)(quoting United States v. Doe, 655 F.2d 920, 922 n.1 (9th Cir. 1981).* Plaintiffs will seek leave of court to proceed under a pseudonym.

18.    DOES Plaintiffs 1 -1000 are nationals of Cameroon, whether living in the USA or in Cameroon, who have suffered injury or harm, whether to themselves, or death of their parents and siblings, or loss of all economic interests and property, due to the actions of FOBENEH and DOES Defendants.

19.    Like minded Plaintiffs have setup a website, www.cameroonvictims.org, where similar plaintiffs, whether residing in the USA or in Cameroon, may submit in

confidentiality the story of their loss, so that plaintiff's attorney may join them in this lawsuit.

20.    Defendant CHRISTOPHER ANU FOBENEH, an individual, resides within the territorial jurisdiction of the United States of America.

21.    DOES defendants 1 through 5000 are US residents, nationals, citizens, who are natives of Cameroon, who have provided financial and other material support, including training, expert advice or assistance, service, and personnel, to named defendant FOBENEH, his AIG, agents, fighters, and related organizations, in violation of Federal and State Anti-terrorism laws, and other criminal statutes.

## JURISDICTION AND VENUE

22.    The Court has jurisdiction over this case under 28 U.S.C. §1331 (federal question jurisdiction); and 28 U.S.C. §1332 (diversity jurisdiction).

23.    Jurisdiction over this action further exists pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship between the parties and the amount in controversy herein exceeds $75,000.00, exclusive of costs.

24.    Venue lies in the Central District of California because one of the plaintiffs resides in this district, and pursuant to 18 U.S.C. §1332.

25.    Venue is further proper in this district pursuant to 18 U.S.C. §2334(a).

26.    The defendant FOBENEH is subject to jurisdiction pursuant to 28 U.S.C. §1331, in that, as set forth in detail below, this action: seeks money damages against FOBENEH for injury and death and loss of business and property caused by Fobeneh, which constitutes an act of "international terrorism" in the United States as defined in 18 U.S.C. §2331. Because of his material support of terrorism and violence, FOBENEH's material support actions led to the deaths of plaintiffs and their loved ones.

-8-

*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

1    27.   The defendant FOBENEH is also subject to jurisdiction pursuant to 28

2    U.S.C. §1331 in that, as set forth in detail below, this action seeks money damages

3    against the FOBENEH  for injury and death occurring in the United States and caused

4    by the tortious act or omission of the FOBENEH  and/or one or more of his agents or

5    partners acting within the scope of their agency or partnership.

6

7                    **II.    FACTUAL ALLEGATIONS**

8

9          **A. LEGAL BACKGROUND: ANTITERRORISM LEGISLATION**

10              i.     The Antiterrorism Act ("ATA")

11         28.    In the 1980's, terrorist groups carried out a number of major terror

12   attacks around the world, killing and injuring many Americans abroad.

13         29. Among these terror attacks were:

14              a.   The April 1983 suicide bombing of the U.S. Embassy in Beirut, Lebanon,

15                   killing 63people, including 17 Americans;

16              b.   The October 1983 suicide bombing of U.S. Marine barracks in Beirut,

17                   Lebanon, killing 241 U.S. Marines and injuring more than 100;

18              c.   the December 1983 terrorist bombings of the U.S. Embassy and the

19                   residential quarters of American company Raytheon in Kuwait;

20              d.   The September 1984 terrorist bombing of a U.S. Embassy annex

21                   northeast of Beirut, Lebanon;

22              e.   The June 1985 hijacking of TWA flight 847;

23              f.   The October 1985 hijacking of the Achille Lauro cruise ship and murder

24                   of wheelchair-bound American Leon Klinghoffer; and

25              g.   The December 1985 terrorist bombings of the Rome and Vienna airports.

26

27

28

30.     In response to these attacks, Congress in 1986 amended the U.S. Criminal Code, Title 18, Part I, to add a new chapter titled, "Extraterritorial Jurisdiction Over Terrorist Acts Abroad Against United States Nationals."

31.     This new chapter contained a new section titled, "Terrorist acts abroad against United States nationals," providing criminal penalties for killing, conspiring, or attempting to kill a national of the United States, or engaging in physical violence with the intent to cause serious bodily injury to a national of the United States or that results in serious bodily injury to a national of the United States.

32.     In addition, Congress later enacted the ATA, which established a private cause of action for U.S. nationals injured by acts of international terrorism, as a legal complement to the criminal penalties against terrorists that kill or injure Americans abroad.

33.     In enacting the ATA, Congress specifically intended that the civil cause of action would not only provide a mechanism for compensating victims of terror, but also serve as an important means of depriving terrorists of financial resources to carry out attacks.

34.     As the ATA was being considered in Congress, the State Department's Deputy Legal Advisor, Alan J. Kreczko, testified before the Senate Judiciary Committee's Subcommittee on Courts and Administrative Practice that this proposed bill "will add to the arsenal of legal tools that can be used against those who commit acts of terrorism against United States citizens abroad."[1]

35.     The Deputy Legal Advisor also testified:

---

[1] "Statement of Alan J. Kreczko, Deputy Legal Adviser, On S. 2465: A bill to provide a new civil cause of action in federal court for terrorist acts abroad against United States nationals," Before the Subcommittee on Courts and Administrative Practice of the Senate Judiciary Committee (July 25, 1990), https://www.state.gov/documents/organization/28458.pdf.

-10-

*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

"[T]his bill will provide general jurisdiction to our federal courts and a cause of action for cases in which an American has been injured by an act of terrorism overseas.

We view this bill as a welcome addition to the growing web of law we are weaving against terrorists. . . . The existence of such a cause of action . . .may deter terrorist groups from maintaining assets in the United States, from benefiting from investments in the U.S. and from soliciting funds within the U.S. In addition, other countries may follow our lead and implement complimentary national measures, thereby increasing obstacles to terrorist operations.

Moreover, the bill may be useful in situations in which the rules of evidence or standards of proof preclude the U.S. government from effectively prosecuting a criminal case in U.S. Courts. Because a different evidentiary standard is involved in a civil suit, the bill may provide another vehicle for ensuring that terrorists do not escape justice."[2]

36.    Likewise, Senator Grassley, one of the sponsors of the bill, explained a purpose of ATA's civil cause of action as follows:

"The United States must take a strong stand against terrorism. The Department of State testified that this bill would add to the arsenal of legal tools that can be used against those who commit acts of terrorism against U.S. citizens abroad. . . .

Now is the time for action. Now is the time to strengthen our ability to both deter and punish acts of terrorism.

We must make it clear that terrorists' assets are not welcome in our country. And if they are found, terrorists will be held accountable where it hurts them most: at their lifeline, their funds."[3]

37.    In July 1992, a Senate Committee Report explained that the ATA's treble damages provision "would interrupt, or at least imperil, the flow of money" to terrorist organizations.

38.    In October 1992, Congress enacted ATA's civil provisions, including 18 U.S.C. §2333.

---

[2] Id.

[3] 36 Cong. Rec. 26716-26717 (Oct. 1, 1990), https://www.gpo.gov/fdsys/pkg/GPO-CRECB-1990-pt19/pdf/GPO-CRECB-1990-pt19-1.pdf.

*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

## B.    The "Material Support" Statutes and Regulations

39.    On February 26, 1993, a group of *al-Qaeda* terrorists detonated a truck bomb under the North Tower of the World Trade Center in New York City, attempting to cause the collapse of both towers and the death of thousands of Americans.

40.    Although the damage from the World Trade Center bombing was limited, it nevertheless killed six people and injured more than one thousand.

41.    In response, Congress again took aim at the resources available to terrorists in September 1994 and enacted 18 U.S.C. § 2339A, making it a crime to provide material support or resources to terrorists, knowing or intending that they would be used for terrorist acts.

42.    FOBENEH and DOES defendants engage in the provision of material support of terrorism through their AIG and its agents and soldiers, as defendants conduct through fund raising meetings, declarations for actions which incite immediate and imminent hard to innocent civilians, their officially declared aim of conduct intimidation and threats against civilians, of kidnappings, and their acknowledged kidnappings, killings, of civilians they find non-compliant with their civilian goals. FOBENEH provides expert advice or assistance, personnel, training, and service to the AIG and related armed militia who conduct acts of violence, intimidation, killings against civilians in the Anglophone regions of Cameroon.

### PLAINTIFF SPECIFIC FACTUAL ALLEGATIONS AGAINST FOBENEH AND HIS ORGANIZATION AIG

43.    Plaintiffs seek such relief against FOBENEH for the attributable acts of the AIG armed groups in the North West and South West regions of Cameroon, its bodies, alter -egos, and officers, employees and agents acting within the scope of their office, employment or agency by FOBENEH knowingly providing material support

and resources to the AIG armed groups and facilitating the deaths of hundreds of others, in that, as set forth in detail herein, he:

     a. Raised, laundered and paid substantial financial support to AIG armed groups to fund its budget and terrorist activities, including intimidation of civilians, and destruction of property.

     b. Funded the terrorist training camps in the North-West and South-West regions of Cameroon where AIG armed groups indoctrinated and taught their soldiers how to carry out guerilla warfare, intimidation, violence, and terrorism against any military or uncooperative or unsupportive civilians.

     c. Provided critical logistical support and resources to AIG armed groups around North-West and South-West regions of Cameroon, funding safe houses, transferring AIG armed groups money, weapons and equipment across international borders and other assistance, all of which enabled AIG armed groups to conduct the attacks that killed plaintiffs parents and kills scores of other civilians, as well as resulted in total economic losses for plaintiff.

     d. Actively supported AIG armed groups in its final preparations for the hit and run attacks and kidnappings, through a network of the their soldiers, officers, and/or agents who met with and aided the AIG killers, providing them with money, cover, advice, contacts, transportation, assistance and other material support and resources.

44. Provides expert advice or assistance to the AIG and related organizations through his regular Facebook postings, YouTube videos, which advises the AIG fighters how, when, to act, stance to adopt, how to react, and instructions on punishments to meter to innocent civilians who don't obey, including plaintiffs parents.

-13-

45.    FOBENEH provides the aforenoted services to the AIG and related organizations as described above. His services also include recruiting "personnel" for the AIG and related organizations, serve as media and public relations for the AIG and related organizations and armed militia groups.

46.    Provides AIG and the armed militia with training on how to engage in subterfuge, propaganda, to achieve their goals of separation from the Republic of Cameroon.

47.    All the above-noted actions are in violation of 18 U.S.C. §§ 2339A and related anti-terrorism and criminal statues, the statutes that prohibits the provision of material support with the knowledge or intent that the support be used to carry out a terrorist attack, and other criminal statutes.

48.    Due to the above-noted actions, at several periods circa September 2016 to present, whenever plaintiff's laborers, workers, agents go to plaintiff's place of business, they are killed, kidnapped, their fingers cut, maimed, tortured, or other despicable act committed against them, all arising from the instructions of Fobeneh.

## DOCUMENTS AND POSTS BY FOBENEH SUPPORTING ALL FACTUAL ALLEGATIONS

49.    Mr. Fobeneh, probably in a tactic designed to shield himself from criminal and civil liability, tries to provide his material support services and expert advise and assistance in slightly ambiguous terms, but the actual meanings of his words comprise instructing his armed groups to go kill and murder and commit arson or other violent crime or terror against anyone who opposes his political goals. In a Press Release on November 12, 2018, Mr. Fobeneh instructed his armed groups to kill Cameroon French soldiers. **Exhibit A.** His use of the term "dealing with them as need be" is a coded meaning for kill them. **See Exhibit A**. We represent some of their spouses, not named as plaintiffs in this lawsuit, for their protection.

-14-

50.     In fact, on multiple occasions in September, October and November, 2018, Mr. Fobeneh materially supported the commission of massacres against the U.N. personnel unless they provide "peace keeping forces." See, for example, **Exhibit B**. On information and belief, his message constituted a material support and incitement which led to his armed militia killing American Charles Wesco, brother of Indiana State Representative Timothy Wesco, on October 30, 2018.

51.     In a Press release dated November 14, 2018, Mr. Fobeneh declared any lawyers who participated in Cameroon Bar Association elections to have acted in "betrayal" and "treason" against his Government of Ambazonia. **Exhibit C.** Consequently, several Cameroonian lawyers, including this attorney, received death threats, while others were reportedly beaten by his armed militia.

52.     In another public posting, Mr. Fobeneh asked that his supporters kill the President of the Republic of Cameroon. **Exhibit D**. This violates Federal law against seeking the overthrow of a government by means of Force.

53.     In addition, against all US laws on education for children, and in particular laws on compulsory education for minors, Mr. Fobeneh and his conspirators, through their material support of violence and terror and in publicly seeking to make Cameroon "ungovernable", have prevented children in the North West and South West regions from going to school for over two years. Students that disobey have had their hands cut with knives, raped, or beaten to near death. In veiled threats to discourage parents from sending their children to school, Mr. Fobeneh's press release tells parents "your children go to school at your own risk." **Exhibit E**. Again, we note that Mr. Fobeneh, to escape liability, uses the terms quoted above, but by consistently proclaiming, not only in this post, but in all many other posts, that it is unsafe for children to go to school, they risk being kidnapped, he is in fact materially supporting the armed groups that have kidnapped children and burnt schools to prevent schools from opening until their political goals are met.

*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

54.     On May 8th, 2018, Mr. Fobeneh wrote a post indicating that all landlords should terminate the leases of "colonial administrators of French Cameroun." **Exhibit G**. In the last week of June 2018, as well as July through present, acting in furtherance of Mr.  Fobeneh's edict, and due to the material support provided by Mr. Fobeneh, several of plaintiffs laborers, workers, personnel, were killed, or maimed, or tortured, or their homes burnt.

55.     Subsequent to June 25, 2018, Mr. Fobeneh called for all armed groups to come under his organization ( See **Exhibit F** ), and most did in fact comply, enabling him to control and direct all the violent and terrorists acts from that date against innocent civilians, many of whom we represent, who have lost loved ones, and/or are refugees or internally displaced.

56.     In a press release dated March 22, 2018, Mr. Fobeneh instructed his armed supporters to threaten, intimidate, and terrorize "every wanna be Senators and Councilors who want to vote." Due to this incitement, participation, and material support of violence and terror through this press release, innocent citizens who sought to vote during elections were killed, tortured, kidnapped, mutilated, and their properties burnt, including many of our clients.

**57.**     In an article entitled "Disagreeing to Agree", dated March 12, 2018, attached as an **Exhibit H**, Mr. Fobeneh declared "I have said that hit and run kidnappings are good strategies as far as the targets are certain institutions and very high profile individuals like SDOs and some of these recalcitrant politicians." He goes on, "And you know where hit and run can be most effective too? Of course, LRC territory and their economic interests." Acting on this incitement, material support, and participation from Fobeneh, his armed militias have engaged in consistent intimidation, brutality, atrocity, torture, killing of any of plaintiff's employees who dares to go to work because they consider plaintiff's business as a "colonial" property. In addition, Mr. Fobeneh's armed militia have now engaged in systematic kidnappings of individuals and politicians, as well as killings and attempted assassinations.

-16-

**FOBENEH's knowledge of AIG armed groups and its terrorist agenda against decedents from October 2016 to present.**

58.    FOBENEH has promised death, harm, retribution, and injury to any civilians who dare opposes any AIG policies. He has  consistently supported violence, intimidation, and criminal acts against civilians who do not strictly abide by his organization's edicts, such as, "ghost town", where all shops must be closed, and "no schools," a prohibition against students returning to school until his aim of an independent Ambazonia state is achieved, or he has scammed enough Cameroonians from millions of dollars in contributions via his illegal vehicles www.mytriptobuea.com or Ambazonia Foundation Inc.

59.    At all relevant times mentioned herein, FOBENEH adopted an extremist version of secession, seeking violence and terror and kidnappings and intimidation against any non-compliant civilian as the means to achieve secession from the Republic of Cameroon.

60.    As detailed herein, FOBENEH's AIG agents, partners, and joint venture associates, continued to provide material support and resources for AIG armed groups through late 2016, and including May 20, 2018 to present, combined actions that led to plaintiffs loss by brutal killings of employees, laborers, agents, and total loss of economic activity at plaintiff's place of business.

**FOBENEH's tortious acts were a proximate cause of the Attacks causing the death of plaintiffs employees, torture and maiming of plaintiffs employees, and total loss of operations and business for over two years.**

61.    FOBENEH and his accomplices, and DOES defendants, set in motion, a series of postings, threats, warnings, to any Anglophone civilian who dares not obey them, or who they consider "French speaking", should be killed, maimed, and their property destroyed or burnt.

-17-

62.     Whenever plaintiffs employees, laborers, agents, disobey the mandate of Fobeneh emanating from the USA, they are killed, tortured, maimed, or other atrocity befalls them.

**FOBENEH's direct funding of AIG**

63.     FOBENEH is responsible for coordinating and raising substantial funding for AIG armed groups that was vital to the operation of that terrorist organization and its preparations for the attacks that kill plaintiff's employees, maims and tortures them, and burns their property. father, as well as hundreds of civilians:

64.     Top ranking   FOBENEH sympathizers made substantial financial contributions to AIG armed groups;

65.     From 2017 through and including present  FOBENEH, acting through his agents, joint venture associates, and partners, including Does Defendants 1-5000, have raised money through meetings, groups, social media, to support their AIG fighters and related organizations in executing their stated political aims and official positions, which includes terrorism as defined in USC code against innocent civilians. Some of these civilians have relatives abroad here in the USA, and their death, torture, kidnapping directly affects their USA citizen families.

**FOBENEH's material support of AIG camps used to indoctrinate and provide terrorist training for AIG soldiers**

66.     FOBENEH's AIG fighters and others involved in supporting violence, terrorism, and other attacks by armed separatist groups from late 2016 to present, were indoctrinated and given their terrorist training necessary to prepare for and execute attacks that killed plaintiffs parents, and other attacks at one or more AIG armed groups terrorist training camps located in the bushes of the North-West and South-West regions, far from where there are roads or easy accessibility.

67.     Prior to and including 2016 to present,  FOBENEH provided logistical support to AIG armed groups in additional ways, as will be determined through further investigation, disclosures and discovery of  FOBENEH.

**FOBENEH's material support for AIG armed groups'
planning and execution of the attacks that killed plaintiff's employees,
maimed them, tortured them, and burnt their property.**

68.     FOBENEH provided material support and resources for AIG armed groups and their fighters directly linked to the actual planning and execution of the Attacks that killed plaintiff's employees and laborer at various dates from late 2016 to present, various torture actions, maiming, and destruction of property. This is in addition to numerous other attacks numbering in the hundreds from late 2016 to present, attacks against students who seek to go to school, government officials, and other innocent civilians. His material support of terrorism and crimes includes:

i.   Fund raising

j.   Using his Facebook posts to provide instructions on strategy, policy, and AIG regulations

k.   Recruiting of fighters

l.   Assistance with procuring and providing weapons, equipment, and other tangible materials.

m.  Coordination with other separatists groups abroad and in Cameroon

n.   Leadership of the AIG in the USA

o.   Expert advice and assistance on how to obtain separation by violence and force from Cameroon

p.   Assistance with the training of AIG fighters

q.   Using other social media such as email, twitter, Skype, WhatsApp to promote AIG violent agenda, plan the dates and times of attacks, and other activities in violation of USA laws.

-19-

r.  Recruiting of administrative personnel in the USA to assist the AIG in all aspects of its goals.

s.  Providing media relations service, coordination services, for the AIG in the USA; and so on and forth, without limitation.

**FOBENEH's domination and control of AIG conduct**

69.    As set forth herein, at all relevant times,  FOBENEH used his position from the USA, which he regards as a safe haven and beyond the reach of plaintiffs attorneys based in Cameroon, to effectuate all the various services, conduct, and duties, without limitation, listed in the preceding paragraphs.

70.    FOBENEH is the spokesperson of the AIG and de facto leader of the AIG in the United States.

**FIRST CAUSE OF ACTION**
**TO RECOVER PERSONAL INJURY <u>PURSUANT TO THE ANTI-TERRORISM ACT</u>**

71.    Plaintiffs repeat and re-allege all of the preceding paragraphs as if fully set forth herein.

72.    This action is brought pursuant to 18 U.S.C. § 2333(a) for the injuries and deaths suffered by U.S. nationals' Jane Doe's employees, laborers, agents, and others in Cameroon.

73.    Those attacks constituted acts of international terrorism pursuant to 18 U.S.C. §2331 that violated federal and state laws against murder, kidnapping, assault, torture, maiming, including but not limited to 18 U.S.C. §2332b (prohibiting terrorist acts of kidnapping, assault and murder).

74.    Pursuant to 18 U.S.C. §2333(a), (d),  FOBENEH aided and abetted AIG armed groups through numerous acts detailed herein by knowingly providing it with

-20-
*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

substantial material assistance to prepare and carry out an act or acts of international terrorism.

75.   Pursuant to 18 U.S.C. §2333(a), (d),  FOBENEH conspired with AIG armed groups and others to provide it with substantial material support and resources, with the shared understanding, knowledge and intent that said support and resources would be used by AIG armed groups to prepare and carry out an act or acts of international terrorism.

76.   The others in the conspiracy currently known to plaintiffs are not named herein, but include Ayaba Cho, Ivo Tapang, Boh Hebert, Akwanga Ebenezer, Mark Bareta, Ikome Sako, Eric Tataw, and others.

77.   Pursuant to §2333(a),   FOBENEH committed an act or acts of international terrorism, as defined in 18 U.S.C. § 2331(1)(A), in violation of federal and state criminal laws, or that would have been a criminal violation if committed within the United States or any state, including but not limited to a violation of the following:

   a. 18 U.S.C. §2(a) — Aiding, abetting, counseling, commanding, inducing or procuring a federal crime;
   b. 18 U.S.C. §371 — Conspiring to commit a federal crime;
   c. 18 U.S.C. §2332b — Conspiring to commit an act of terrorism;
   d. 18 U.S.C. §2339A - Providing material support to terrorists;
   e. 18 U.S.C. §2339C - Prohibitions against the financing of terrorism;
   f. CA Penal Code §31 — Accomplice liability – Aiding and Abetting Law;
   g. CA Penal Code §182 - Criminal Conspiracy
   h. CA Penal Code §32 – Accessory after the fact

78.   FOBENEH's conduct amounted to a violation of 18 U.S.C. § 2(a) because FOBENEH intentionally aided, abetted and counseled the commission of a criminal act or acts of international terrorism by AIG armed groups, including its operatives, by providing the terrorist organization with material support, resources and

*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

funding with the knowledge that AIG armed groups would use such assistance to prepare for and commit such a criminal act or acts.

79.    FOBENEH's conduct amounted to a violation of 18 U.S.C. §371 because it conspired with AIG armed groups and others to provide it with substantial material support and resources with the shared understanding, knowledge and intent that said support and resources would be used by AIG armed groups to prepare for and carry out a criminal act or acts of international terrorism.

80.    FOBENEH's conduct amounted to a violation of 18 U.S.C. §2339A in that he provides material support or resources for AIG armed groups and/or conspired with AIG armed groups and others to provide material support or resources for AIG armed groups, with the knowledge or intent that they would be used in preparation for, or in carrying out a violation of the statutes specified in 18 U.S.C. §2339A, including 18 U.S.C. §2332b (prohibiting terrorist acts of kidnapping, assault and murder) and violation of others laws as itemized in paragraph 80.

81.    FOBENEH's conduct amounted to a violation of 18 U.S.C. § 2339A in that it concealed or disguised the nature, location, source, or ownership of AIG armed groups' material support or resources and/or conspired with AIG and FOBENEH's agents, FOBENEH's accomplices, AIG armed groups, AIG armed groups operatives and sympathizers and others, known and unknown, to conceal or disguise the nature, location, source or ownership of AIG armed groups' material support or resources, with the knowledge or intent that they would be used in preparation for, or in carrying out a violation of the statutes specified in 18 U.S.C. §2339A, including 18 U.S.C. §2332b (prohibiting terrorist acts of kidnapping, assault and murder) and violation of others laws as itemized in paragraph 80.

82.    FOBENEH's conduct amounted to a violation of relevant state criminal laws on facilitating, aiding and abetting a crime, and conspiracy, including but not limited to those cited above, in that it:

a.  intentionally aided, abetted and counseled AIG armed groups by providing it with material support, resources and funding with the knowledge that AIG armed groups would use such assistance to commit an act or acts of international terrorism; and/or

b.  believing it was probably rendering aid in the form of material support or resources and funds to AIG armed groups to engage in a crime, provided AIG armed groups with the means or opportunity for the commission thereof and which in fact aided AIG armed groups to commit the Attack that killed plaintiff's father; and/or all other attacks and intimidation on innocent civilians from October 2016 to present.

c.  conspired with AIG leaders, soldiers, and fighters, particularly the AIG armed groups, AIG armed groups operatives and sympathizers and others known and unknown, to violate relevant state criminal laws on facilitating and aiding and abetting a crime and committing an act or acts of terrorism, including assault, kidnapping and murder.

83.  As detailed herein, the aforesaid act or acts of international terrorism:

a.  involve a violent act or acts dangerous to human life, as demonstrated by the known and foreseeable outcomes of injury and death resulting from providing substantial assistance to AIG armed groups terrorists;

b.  were committed primarily outside the territorial jurisdiction of the United States and also transcended national boundaries in terms of the means by which they were accomplished, the persons they appear intended to intimidate or coerce, and the locales in which their perpetrators operated; and

c.  appeared to be intended to intimidate or coerce a civilian population; to influence the policy of a government by intimidation or coercion; or, to

-23-

affect the conduct of a government by mass destruction, kidnapping or assassination.

84.    The aforesaid acts of FOBENEH were not mere negligence, but each act individually and/or in combination with one or more acts, constituted conduct that was intentional, reckless, willful and/or grossly negligent and each of those acts individually and/or in combination with one or more of those acts was a proximate cause of the attacks that killed, maimed, tortured, and burnt plaintiffs employees, laborers, and agents.

85.    As a result, the FOBENEH and all DOES defendants are liable to plaintiffs for all damages resulting from the injuries and harm suffered by plaintiff,  as well as the deaths and sufferings of all those similarly situated as plaintiffs.

86.    WHEREFORE, plaintiffs pray that judgment(s) for relief in the form of an award or awards of monetary damages for personal injury, all recoverable losses under 28 U.S.C. §2333 and other appropriate relief be entered on their first cause of action in favor of the plaintiffs individually and against the defendant FOBENEH , with separate awards for each plaintiff, where appropriate, plus interest, costs, punitive damages, treble damages, attorney's fees, and such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
## FOR PERSONAL INJURY DAMAGES PURSUANT TO THE ALIEN TORT CLAIMS ACT

87.    Plaintiffs repeat and re-allege all of the preceding paragraphs as if fully set forth herein.

88.    The Alien Tort Claims Act, 28 U.S.C. §1350, allows aliens to sue for torts committed in violation of the law of nations, international law or a treaty of the United States.

*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

89. The conduct of FOBENEH as detailed herein to provide substantial material support, resources and sponsorship for AIG armed groups and its acts of international terrorism resulting in the Attack that that killed, maimed, tortured, and burnt plaintiffs employees, laborers, and agents. constitutes a clear violation of the law of nations and international law, which includes international legal norms prohibiting crimes against humanity, mass murder, genocide, torture, extrajudicial killing, air piracy, financing of terrorism, and terrorism, which can be found in and derived from, among other things, the following conventions, agreements, U.N. declarations and resolutions, and other documents:

a. Charter of the International Military Tribunal, Aug. 8, 1945, 59 Stat. 1544, 82 U.N.T.S. 279;

b. Allied Control Council Law No. 10 (Dec. 20, 1945);

c. Convention on the Prevention and Punishment of the Crime of Genocide, Dec. 9 1948, 78 U.N.T.S. 277;

d. Geneva Convention (IV) Relative to the Protection of Civilian Persons in Time of War, Aug. 12, 1949, 75 U.N.T.S. 287;

e. Hague Convention for the Suppression of Unlawful Seizure of Aircraft (Hijacking), Dec. 16, 1970, 22 U.S.T. 1641, 860 U.N.T.S. 105;

f. International Convention for the Suppression of Terrorist Bombings, Dec. 15, 1997, 2149 U.N.T.S. 284 (entered into force May 23, 2001);

g. International Convention for the Suppression of the Financing of Terrorism, Dec. 9, 1999, 2178 U.N.T.S. 229 (entered into force Apr. 10, 2002);

h. U.N. Security Council Resolution 1267, U.N. Doc. S/RES/1267 (Oct. 15, 1999);

i. U.N. Security Council Resolution 1373, U.N. Doc. S/RES/1373 (Sept. 28, 2001);

*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

j.  Protocol Additional (I) to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of International Armed Conflict, June 8, 1977, 1125 U.N.T.S. 3;

k.  Protocol Additional (II) to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of Non-International Armed Conflicts, June 8, 1977, 1125 U.N.T.S. 609;

l.  Statute of the International Criminal Tribunal for the Former Yugoslavia (ICTY), in Report of the Secretary-General pursuant to paragraph 2 of S.C. Res.808, May 3, 1993, U.N. Doc. 8/25704, adopted unanimously by S.C. Res. 827, U.N. SCOR, 48th Sess., 3217th mtg., 16, U.N. Doc. S/PV.3217 (1993);

m.  The Convention on the Prevention and Punishment of Crimes Against International Protected Persons, Including Diplomatic Agents, 28 U.S.T. 1975, T.I.A.S. No. 8532 (1977), implemented in 18 U.S.C. § 1121;

n.  The General Assembly Resolutions on Measures to Prevent International Terrorism, G.A. Res. 40/61 (1985) and G.A. Res. 42/159 (1987); and

o.  The Convention on the High Seas, April 29, 1958, arts. 14-22 (piracy), 13 U.S.T. 2312, 450 U.N.T.S. 11.

90.   FOBENEH's conduct was a substantial cause of the Attacks that killed, maimed, tortured several employees of plaintiff, as well as caused the total loss of plaintiffs economic interests from late 2016 to present.

## THIRD CAUSE OF ACTION
## FOR RICO (18 U.S.C. § 1962(C))

91.   Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

92.   FOBENEH and all Does Defendants 1 – 5000 (collectively "Defendants") are all "persons" within the meaning of 18 U.S.C. § 1961(3). At all relevant times, Defendants conducted the affairs of an Enterprise—which affected interstate and foreign commerce—through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

**A.   AIG is the Racketeering Enterprise**

93.   AIG is a Racketeering Enterprise, as that term is used in 18 U.S.C. § 1961(4). The Enterprise was formed by January of 2017.

94.   AIG had an ongoing organizational framework for carrying out its objectives.

95.   As described above, FOBENEH and each DOES Defendant participated in the operation or management of the Enterprise.

96.   Because AIG raises millions of dollars to support their terrorist operations in Cameroon, by contacting sympathetic USA based Anglophone Cameroon natives, it affects interstate and foreign commerce.

97.   FOBENEH and each DOES Defendant conducted and/or participated in the affairs of the Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §2(a) — Aiding, abetting, counseling, commanding, inducing or procuring a federal crime; 18 U.S.C. §371 — Conspiring to commit a federal crime; 18 U.S.C. §2332b — Conspiring to commit an act of terrorism; 18 U.S.C. §2339A - Providing material support to terrorists; 18 U.S.C. §2339C - Prohibitions against the financing of terrorism; without limitation.

**B.   Alternatively, and at the Very Least, AIG Was Part of an Association-In-Fact Enterprise**

98.   Alternatively, and at the very least, AIG was part of an Association-In-Fact Enterprise comprising FOBENEH and DOES defendants, AIG, and similar

-27-

*Jane Doe v. CHRISTOPHER ANU FOBENEH*                    Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

organizations. . The Association-In-Fact Enterprise was formed by at least January 2017. From that time until present, the members of the Association-In-Fact Enterprise worked together to further their mutual goals of separation from the Republic of Cameroon to form an Ambazonia state, using guerilla tactics, terrorism, providing material support to AIG fighters and related organizations, violence and intimidation of Anglophone Cameroonians who do not support their political aims, kidnappings, and other evil atrocities.

99.   The Association-In-Fact Enterprise has an ongoing organizational framework for carrying out its objectives. In fact, the Association-In-Fact Enterprise could not have carried out its intricate task of sharing confidential information at the moments when it would be most beneficial to AIG unless it had some structure for making and communicating group decisions. The Association-In-Fact knows how to reach its AIG fighters, agents, camps to provide instructions on what carnage to execute on designated dates and times, including the Attack that killed plaintiff's father.

100.   As described above, each Defendant participated in the operation or management of the Association-In-Fact Enterprise, and benefitted financially from the enterprise.

101.   Because the Association-In-Fact Enterprise's activities including the raising of funds from Cameroon native sympathizers across the 50 states of the USA, using interstate transportation and communications, traveling interstate to give speeches, incite support, obtain goods and services for the AIG based operatives in Cameroon, it affected interstate and foreign commerce.

## C.   RICO Predicate Acts

102.   Each Defendant conducted and/or participated in the affairs of AIG and the Association-In-Fact Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §2(a) — Aiding, abetting, counseling,

-28-

commanding, inducing or procuring a federal crime; 18 U.S.C. §371 — Conspiring to commit a federal crime; 18 U.S.C. §2332b — Conspiring to commit an act of terrorism; 18 U.S.C. §2339A - Providing material support to terrorists; 18 U.S.C. §2339C - Prohibitions against the financing of terrorism; without limitation.

103.   Additional facts, conduct, actions, of FOBENEH and DOES defendants, including AIG, acting jointly, and in concert with each other, are as noted in the Exhibit A and Exhibit B documents listed with links to the videos, as well as videos listed, with hyperlinks to the videos.

**C.   RICO Damages**

104.   Plaintiff has been injured by Defendants' violation of 18 U.S.C. § 1962(c). Defendants caused enormous harm to Plaintiff, as described above. All of these injuries occurred within the United States.

## FOURTH CAUSE OF ACTION
## FOR RICO CONSPIRACY (18 U.S.C. § 1962(D))

105.   Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

106.   Defendants conspired with each other to violate 18 U.S.C. § 1962(c). Defendants knowingly agreed, combined, and conspired to conduct the affairs of the Enterprise or the Association-In-Fact Enterprise through AIG operations, Interim Government ("IG") operations, Southern Cameroons Defense Forces (SOCADEF) operations, and the like. Each Defendant agreed that the operation would involve repeated violations of 18 U.S.C. §2(a) — Aiding, abetting, counseling, commanding, inducing or procuring a federal crime; 18 U.S.C. §371 — Conspiring to commit a federal crime; 18 U.S.C. §2332b — Conspiring to commit an act of terrorism; 18 U.S.C. §2339A - Providing material support to terrorists; 18 U.S.C. §2339C -

1    Prohibitions against the financing of terrorism; without limitation Defendants'
2    conspiracy to violate 18 U.S.C. § 1962(c) violated § 1962(d).

3        107.   Plaintiffs have been injured by Defendants' violation of 18 U.S.C. §
4    1962(d). Plaintiffs have been injured by Defendants' violation of 18 U.S.C. § 1962(c).
5    Defendants caused enormous harm to Plaintiff's. All of these injuries occurred within
6    the United States.

7                        **FIFTH CAUSE OF ACTION**
     **LIABILITY    FOR    AIDING    AND    ABETTING    ACTS    OF**
8    **INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333(a)**

9        108.   Plaintiffs repeat and re-allege each and every allegation of the foregoing
10   paragraphs as if fully set forth herein.

11       109.   FOBENEH and AIG have committed, planned, or authorized activities
12   that involved violence or acts dangerous to human life that are a violation of the
13   criminal laws of the United States, or that would be a criminal violation if committed
14   within the jurisdiction of the United States, including inter alia the prohibition on
15   killing, attempting to kill, causing serious bodily injury, or attempting to cause serious
16   bodily injury, as set forth in 18 U.S.C. § 2332, as well as crimes of assault, battery,
17   criminal conspiracy.

18       110.   These activities committed, planned, or authorized by FOBENEH and
19   his AIG appear to have been, and were intended to: (a) intimidate or coerce the civilian
20   populations of Cameroon; (b) influence the policy of the Government of Cameroon
21   by intimidation or coercion; or (c) affect the conduct of the Governments Cameroon,
22   France, the United States and other countries by violence, destruction of property,
23   killings of government officials, kidnapping, and intimidation.

24       111.   These activities committed, planned, or authorized by FOBENEH and
25   AIG occurred partially outside of the territorial jurisdiction of the United States and
26   constituted acts of international terrorism as defined in 18 U.S.C. § 2331(1).

27

28
                                      -30-
     _____        Case .No. _____
     *Jane Doe v. CHRISTOPHER ANU FOBENEH*
           Complaint For Damages, Injunction and Declaratory Relief

112.   Plaintiffs have been injured in their person by reason of the acts of international terrorism committed, planned, or authorized by FOBENEH and AIG.

113.   At all times relevant to this action, Defendant FOBENEH knew that AIG was an Organization, that it had engaged in and continued to engage in illegal acts of terrorism, including international terrorism.

114.   Defendants knowingly provided substantial assistance and encouragement to AIG and related armed groups and militia in Cameroon, and thus aided and abetted AIG and these armed separatists groups in committing, planning, or authorizing acts of international terrorism, including the acts of international terrorism that injured Plaintiffs.

115.   By aiding and abetting AIG and related armed groups and militia in Cameroon in committing, planning, or authorizing acts of international terrorism, including acts that caused each of the Plaintiffs to be injured in his or her person and property, Defendants are liable pursuant to 18 U.S.C. § 2333(a) and (d) for threefold any and all damages that Plaintiffs have sustained as a result of such injuries, and the costs of this suit, including attorney's fees.

**SIXTH CAUSE OF ACTION**
**LIABILITY FOR CONSPIRING IN FURTHERANCE OF ACTS OF INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333(a)**

116.   Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

117.   Defendant FOBENEH knowingly agreed, licensed, and permitted AIG and its affiliates to register and use Defendants' platform, Facebook posts, WhatsApp account, twitter, phone communications, financial support, fundraising, conduct, actions, participations, and other services to promote and carry out AIG's activities, including AIG's illegal acts of international terrorism that injured Plaintiffs.

*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

118.   Defendant FOBENEH were aware that U.S. federal law prohibited providing material support and resources to, or engaging in transactions with, terrorist organizations and/or engaging in acts constituting international terrorism.

119.   Defendant FOBENEH thus conspired with AIG in its illegal provision of Defendants' platform, Facebook posts, WhatsApp account, twitter, phone communications, and conduct, financial support, fundraising, actions, participations other services to promote and carry out AIG's illegal acts of international terrorism, including the acts that injured Plaintiffs.

120.   By conspiring with AIG in furtherance of AIG's committing, planning, or authorizing acts of international terrorism, including acts that caused each of the Plaintiffs to be injured in his or her person and property, FOBENEH is liable pursuant to 18 U.S.C. § 2333(a) and (d) for threefold any and all damages that Plaintiffs have sustained as a result of such injuries, and the costs of this suit, including attorney's fees.

**SEVENTH CAUSE OF ACTION**
**PROVISION OF MATERIAL SUPPORT TO TERRORISTS**
**IN VIOLATION OF 18 U.S.C. § 2339A AND 18 U.S.C. § 2333**

121.   Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

122.   FOBENEH's conduct of fundraising activities for the AIG, instructions to organize violence in Cameroon,  platform, Facebook posts, WhatsApp account, twitter, phone communications, and conduct, financial support, fundraising, actions, participations, other services to promote and carry out, substantially assisted AIG and other armed separatist groups in carrying out its terrorist activities, including recruiting, radicalizing, and instructing terrorists, raising funds, creating fear and carrying out attacks, among other things.

*Jane Doe v. CHRISTOPHER ANU FOBENEH*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

123.   Through his actions, FOBENEH has also provided personnel to AIG and related armed separatist groups by making FOBENEH and his AIG leaders, members, and potential new recruits available to each other for mutual help, assistance, encouragement, sharing of information, services, and expert advice or assistance.

124.   These services, equipment, and personnel constituted material support and resources pursuant to 18 U.S.C. § 2339A, and they facilitated acts of terrorism in violation of 18 U.S.C. § 2332 that caused the death of Plaintiff's parents and injuries to Plaintiffs.

125.   FOBENEH provided these services, equipment, and personnel to AIG and related armed separatist groups, knowing that they were to be used in preparation for, or in carrying out, criminal acts including the acts that injured the Plaintiffs.

126.   As set forth more fully above, but for the material support and resources provided by Defendants, the attack that injured and killed Plaintiffs employees would not have occurred, nor the total loss of their economic interests.

127.   By committing violations of 18 U.S.C. § 2339A that have caused the Plaintiffs to be injured in his or her person, business or property, Defendants are liable pursuant to 18 U.S.C. § 2333 for any and all damages that Plaintiffs have sustained as a result of such injuries.

## EIGTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

128.   Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

129.   FOBENEH engaged in negligent behavior by providing services, material support, training, expert advice or assistance, personnel, social media platform, other media communications, to AIG and related armed separatist groups.

-33-

130.   FOBENEH's acts of providing the aforenoted actions to AIG and other armed separatist groups constituted a willful violation of federal statutes, and thus amounted to a willful violation of a statutory standard.

131.   As a direct, foreseeable and proximate result of the conduct of FOBENEH as alleged herein above, Plaintiffs has suffered severe emotional distress, and therefore FOBENEH is liable to the Plaintiffs for Plaintiffs' severe emotional distress and related damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on all Counts, and seeks such relief as specified below for all Counts for which such relief is provided by law:

a)   Awarding Plaintiff damages in an amount to be determined at trial;

b)   Awarding Plaintiff compensatory and treble damages, as available, in an amount to be proven at trial;

c)   Awarding Plaintiff the financial gain earned by Defendants as a consequence of the violations described herein;

d)   Awarding Plaintiff statutory damages, as available;

e)   Awarding Plaintiff punitive damages, as available;

f)   Issuing a **<u>Declaration</u>** that: defendant FOBENEH's conduct, and that of DOES defendants, and like sympathizers, who assist with providing material support to AIG and similar organization attacks on innocent civilians is a violation of USA ant-terrorism act laws.

g)   Issuing an **<u>Injunction, including a preliminary injunction,</u>**: restraining FOBENEH and his agents, fighters, organization, and those acting in active concert or participation with him from: engaging in conduct as alleged in this Complaint, and principally the material support of terrorism in Cameroon, and

-34-

including, but not limited to an injunction against engaging in these crimes: 18 U.S.C. §2(a) — Aiding, abetting, counseling, commanding, inducing or procuring a federal crime; 18 U.S.C. §371 — Conspiring to commit a federal crime; 18 U.S.C. §2332b — Conspiring to commit an act of terrorism; 18 U.S.C. §2339A - Providing material support to terrorists; 18 U.S.C. §2339C - Prohibitions against the financing of terrorism; kidnapping, assault, battery, murder, destruction of property, civilian intimidation and threats, without limitation.

h) Awarding Plaintiff all costs and attorneys' fees to the full extent permitted under the applicable law;

i) Awarding Plaintiff pre- and post-judgment interest as permitted by law;

j) Awarding any other relief as the Court may deem just and proper.

k) That the Court, *sua sponte*, with its inherent Constitutional and Statutory powers to ensure justice, and to help save lives and pain and sufferings of similar plaintiffs within its jurisdiction:

    a. Refer this matter to the terrorism units of the FBI with jurisdiction over this defendant FOBENEH who lives and works within the San Jose community, with most persons oblivious to his true person, as his conduct and actions present a clear and present danger of imminent terrorism that harms US citizens, for investigations and assessment consistent with the allegations herein;

    b. Refer this matter to the terrorism units of the California State and local police with jurisdiction over the defendant FOBENEH, as his conduct and actions present a clear and present danger of terrorism imminent that harms US citizens, for investigations and assessment consistent with the allegations herein;

*Jane Doe v. CHRISTOPHER ANU FOBENEH*    Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

c. Refer this defendant FOBENEH, an immigrant, to the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement, and other related DHS agencies, for immediate investigation and assessment to determine whether his conduct and actions present a clear and present danger of imminent terrorism that harms US citizens, for investigations consistent with the allegations herein;

d. All other actions which this Court deems appropriate to prevent terrorist acts emanating from FOBENEH harming US citizens and residents.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Date: February 8, 2019                    Respectfully Submitted,

EMMANUEL NSAHLAI

By: _____/S/_____

NSAHLAI LAW FIRM

EMMANUEL NSAHLAI, SBN (207588)
email: nsahlai.e@nsahlailawfirm.com
3250 WILSHIRE BLVD, STE 1500
LOS ANGELES, CA 90010
Tel (213) 797-0369
Fax (213) 973-4617

Attorney for Plaintiffs

-36-

1
2

# CERTIFICATE OF SERVICE

3

     I HEREBY CERTIFY that on December 26, 2018, I directed that the foregoing

4
document be electronically filed with the Clerk of the Court by using the CM/ECF
system, and

5
     [X] (By U.S. Mail) I deposited such envelope in the mail at Los Angeles, CA

6
on February 8, 2019with postage thereon fully prepaid. I am aware that on motion of
the party served, service is presumed invalid if postal cancellation date or postage

7
meter date is more than one day after date of deposit for mailing in affidavit.

8
     Defendant,

9

10
CHRISTOPHER ANU FOBENEH
3354 Rogerdale Rd Apt. 224
Houston, TX 77042-5027

11
12
13

              By:_____/S/_____
                    EMMANUEL NSAHLAI

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-1-
_____ *v.* _____     Case .No. _____
Certificate of Service

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28